# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

K.N.,[1]

      Plaintiff,

v.

                                                       Case No. 20-2653-DDC

KILOLO KIJAKAZI, Acting
Commissioner of the Social Security
Administration,

      Defendant.

## MEMORANDUM AND ORDER

Plaintiff K.N. seeks judicial review under 42 U.S.C. § 405(g) of the final decision by the

Commissioner of the Social Security Administration (the "Commissioner") denying her claim

for Disability Insurance Benefits and Supplement Security Income under Titles II and XVI of the

Social Security Act, as amended.  Plaintiff has filed a brief asking the court to reverse the

Commissioner's decision denying her claim and remand her claim to the Commissioner with

directions to award her benefits.  Doc. 18 at 18.  The Commissioner has filed a response brief,

opposing plaintiff's request for judicial review and asking the court to affirm the

Commissioner's decision.  Doc. 21 at 1.  This matter ripened for decision when plaintiff filed a

reply brief on November 3, 2021.  Doc. 22.  Having reviewed the administrative record and the

parties' briefs, the court affirms the Commissioner's decision denying plaintiff benefits.  The

court explains why, below.

---

[1]      The court makes all its "Memorandum and Order[s]" available online.  Therefore, as part of the
court's efforts to preserve the privacy interests of Social Security disability claimants, it has decided to
caption such opinions using only plaintiff's initials.

## I.      Factual Background and Procedural History

On June 5, 2019, plaintiff applied for Disability Insurance Benefits and Supplement Security Income under Titles II and XVI of the Social Security Act.  Doc. 11-1 at 171–83 (AR 167–79).  She alleged disability beginning on May 1, 2016, based on juvenile idiopathic arthritis.  *Id.* at 177 (AR 173).  The Commissioner denied plaintiff's claim initially on September 26, 2019, *id.* at 105–09 (AR 101–105), and again denied the claim upon reconsideration on January 2, 2020, *id.* at 113–21 (AR 109–17).  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 124–25 (AR 120–21).  The ALJ conducted a hearing on September 2, 2020, where plaintiff appeared and testified.  *Id.* at 34, 38–50 (AR 30, 34–46).

On September 22, 2020, the ALJ issued a written decision concluding that plaintiff was not disabled, as the Social Security Act defines that term, from May 1, 2016, to the decision's date.  *Id.* at 16–28 (AR 12–24).  Plaintiff then filed an appeal with the Appeals Council of the Social Security Administration.  *Id.* at 11–12 (AR 7–8).  On October 27, 2020, the Appeals Council denied plaintiff's request for review.  *Id.* at 5–7 (AR 1–3).  Plaintiff has exhausted the proceedings before the Commissioner and now seeks judicial review and reversal of the final decision denying her Disability Insurance Benefits and Supplement Security Income.

## II.     Legal Standard

### A.      Standard of Review

Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's denial of benefits is limited to this question:  Whether substantial evidence in

the record supports the factual findings and whether the Commissioner applied the correct legal

standards.  *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020); *see also Mays v.*

*Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" but it must be "more than a mere scintilla[.]"  *Noreja*, 952

F.3d at 1178 (citations and internal quotation marks omitted).  While the courts "consider

whether the ALJ followed the specific rules of law that must be followed in weighing particular

types of evidence in disability cases," they neither reweigh the evidence nor substitute their

judgment for the Commissioner's.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation

and internal quotation marks omitted).  But they also do not accept "the findings of the

Commissioner" mechanically or affirm those findings "by isolating facts and labeling them

substantial evidence, as the court[s] must scrutinize the entire record in determining whether the

Commissioner's conclusions are rational."  *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D.

Kan. 2012) (citation omitted).  When the courts decide whether substantial evidence supports the

Commissioner's decision, they "examine the record as a whole, including whatever in the record

fairly detracts from the weight of the Commissioner's decision[.]"  *Id.* (citation omitted).

"'Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes

mere conclusion.'"  *Noreja*, 952 F.3d at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257,

1261–62 (10th Cir. 2005)).

Failing "to apply the proper legal standard may be sufficient grounds for reversal

independent of the substantial evidence analysis."  *Brown ex rel. Brown v. Comm'r of Soc. Sec.*,

311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th

Cir. 1994)).  But such failure justifies reversal only in "'appropriate circumstances'"—applying

an improper legal standard does not require reversal in all cases. *Hendron v. Colvin*, 767 F.3d

951, 954 (10th Cir. 2014) (quoting *Glass*, 43 F.3d at 1395); *accord Lee v. Colvin*, No. 12-2259-

SAC, 2013 WL 4549211, at \*5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in

*Glass*).  Some errors are harmless and require no remand or further consideration.  *See, e.g.*,

*Mays*, 739 F.3d at 578–79; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012);

*Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

> **B.      Disability Determination**

Claimants seeking Disability Insurance Benefits and Supplement Security Income bear

the burden to show that they are disabled.  *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009)

(citation omitted).  In general, the Social Security Act defines "disability" as the "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

The Commissioner applies "a five-step sequential evaluation process to determine

disability."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520

(governing claims for disability insurance benefits) and 20 C.F.R. § 416.920 (governing claims

for supplemental security income)).  As summarized by the Tenth Circuit, this familiar five-step

process proceeds in this fashion:

> Step one requires the agency to determine whether a claimant is presently engaged
> in substantial gainful activity.  If not, the agency proceeds to consider, at step two,
> whether a claimant has a medically severe impairment or impairments. . . . At step
> three, the ALJ considers whether a claimant's medically severe impairments are
> equivalent to a condition listed in the appendix of the relevant disability regulation.
> If a claimant's impairments are not equivalent to a listed impairment, the ALJ must
> consider, at step four, whether a claimant's impairments prevent [the claimant]
> from performing [the claimant's] past relevant work.  Even if a claimant is so
> impaired, the agency considers, at step five, whether [the claimant] possesses the

sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).  The claimant must bear the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national economy.'"  *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  This analysis terminates if the Commissioner determines at any point that the claimant is or is not disabled.  *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("If it is determined that a claimant is or is not disabled at any point in the analysis, the review stops.").

## III.   Discussion

The ALJ found that plaintiff has the following severe impairments:  Juvenile idiopathic arthritis and obesity.  Doc. 111-1 at 22 (AR 18).  But, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets the severity of one of the listed impairments in 20 C.F.R. pt. 404.  *Id.*  Instead, the ALJ determined that plaintiff has the RFC "to perform sedentary work as defined in" 20 C.F.R. § 404.1567(a) and § 416.967(a).  *Id.* Specifically, the ALJ found that:

> The claimant can lift/carry 20 pounds occasionally and lift 10 pounds frequently. She is able to walk or stand for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday.  The claimant can occasionally climb stairs but never ropes, scaffolds or ladders and occasionally kneel or crawl.  She is limited to occasional push/pull with upper extremities.  The claimant is limited to frequent handling and fingering.  She is limited to occasional fine or precise manipulation.  The claimant must avoid prolonged exposure to wetness, humidity and vibrating machinery.

*Id.*  Based on this RFC finding, the ALJ determined that plaintiff was unable to perform any past relevant work.  *Id.* at 27 (AR 23).  But, given plaintiff's age, education, work experience, and

5

RFC, the ALJ concluded "there are jobs that exist in significant numbers in the national economy" that plaintiff can perform as delineated in 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a). *Id.*

Plaintiff challenges the Commissioner's findings in three ways. She argues that: (1) the ALJ erred by finding that plaintiff's impairments don't meet the requirements of Listing 14.09; (2) the ALJ erred by relying on a flawed RFC to find that plaintiff can perform other work in the national economy; and (3) the ALJ erred by failing to weigh properly the medical opinion evidence, and thus, the ALJ's decision isn't supported by sufficient substantial evidence. The court addresses each argument, in turn, below.

## A.  The ALJ did not err in the evaluation of Listing 14.09.

Plaintiff's opening brief argues that the ALJ erred by concluding that plaintiff's impairment did not meet the requirements of Listing 14.09.[2] The parties agree that Listing 14.09 defining "inflammatory arthritis" requires "[p]ersistent inflammation or persistent deformity of . . . [o]ne or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively[.]" 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 14.09(A)(2) (2020).[3]

---

[2]    Plaintiff's Reply abandons this argument. *See generally* Doc. 22. It never mentions Listing 14.09. *Id.* Based on plaintiff's failure to address this argument in the Reply, the court can consider it abandoned. *See In re FCC 11-161*, 753 F.3d 1015, 1100–01 (10th Cir. 2014) (rejecting petitioners' argument because their reply brief was silent on an issue and made no attempt to rebut the respondents' argument); *see also Cayetano-Castillo v. Lynch*, 630 F. App'x 788, 794 (10th Cir. 2015) (holding that an appellant, who does not respond to an argument in its reply brief, "'waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the appellee'" because the court is not "required to do his work for him and dissect [the appellee's] plausible argument") (quoting *Hardy v. City Optical, Inc.*, 39 F.3d 765, 771 (7th Cir. 1994))). Nevertheless, the court addresses the argument because it also fails on its merits.

[3]    The parties cite the version of Listing 14.09 that was effective when the ALJ issued his decision in September 2020. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 14.09(A)(2) (2020), https://www.ecfr.gov/on/2020-09-30/title-20/chapter-III/part-404/subpart-P/appendix-Appendix%201%20to%20Subpart%20P%20of%20Part%20404.

The Commissioner responds that the ALJ found at step three that plaintiff "does not meet the requirements of Listing 14.09 (inflammatory arthritis)[.]" Doc. 11-1 at 22 (AR 18). He reached this conclusion because plaintiff failed to present "evidence of a persistent deformity in one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively or one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively." *Id.*

Our Circuit has held ALJs must "set out [their] specific findings and [ ] reasons for accepting or rejecting evidence at step three." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). But, the Circuit has explained, when an ALJ provides detailed findings at other steps in the analysis supporting the step three decision in a readily reviewable manner, the ALJ has met the requirement. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005) (reversing decision denying Disability Insurance Benefits because "any deficiency in the ALJ's articulation of his reasoning to support his step three determination" was "harmless" based on his "confirmed findings at steps four and five"). In *Fischer-Ross*, the ALJ failed to include specific findings underlying the step three analysis within that discussion, but included them instead at the step four and five discussion. *Id.* The Circuit affirmed the ALJ's findings, holding that *Clifton*'s rationale aimed to assure that, upon judicial review, the reviewing body had sufficient information to discern whether the ALJ had acted properly. *Id.* at 734. Thus, the Circuit found harmless administrative error where the ALJ's decision showed he clearly had considered the evidence, even though the discussion appeared elsewhere in the record. *Id.* at 735.

Like *Fischer-Ross*, the ALJ's step three analysis doesn't cite specific evidence to demonstrate that he considered the record. Doc. 11-1 at 22 (AR 18). But, also like *Fischer-Ross*, the ALJ's step four discussion contains multiple references to medical evidence which

7

provides more than the scintilla of evidence that the law requires.  *Id.* at 22–27 (AR 18–23)

(discussing consultative examinations where physicians opined that plaintiff was capable of

performing various tasks including one physician who opined that plaintiff could perform fine

and gross manipulative movement of the hands and fingers; medical records showing that

plaintiff received treatment with injections and that her functioning improved after injections;

and opinions of the State agency medical consultants who opined that plaintiff was capable of

performing light work).  Thus, while the ALJ erred by not citing sufficient evidence in his step

three analysis, the error was harmless error because he later cited the record's medical evidence

within the RFC analysis.

Also, plaintiff argues that the ALJ erred by failing to consider a letter written by

plaintiff's mother.  The letter describes plaintiff's limitations, as observed by her mother.  *Id.* at

285–89 (AR 281–85)  As the Commissioner correctly explains, the letter's description of

plaintiff's limitations is cumulative of plaintiff's own subjective complaints about her symptoms.

The ALJ described those subjective complaints, *id.* at 23 (AR 19), but found them inconsistent

with plaintiff's functioning during her consultive examination, the improvement in her

functioning after the injection treatments, her daily activities, and the earlier administrative

findings, *id.* at 23–27 (AR 19–23).  Such an evaluation of plaintiff's subjective complaints is

consistent with the governing legal standard.  *See* 20 C.F.R. § 404.1529(c)(3)–(4) (explaining

that an evaluation of a claimant's symptoms includes considering factors such as daily activities,

the type and effectiveness of treatment, and objective medical evidence).  And, the ALJ's failure

to discuss specifically the letter from plaintiff's mother isn't reversible error.  *See Best-Willie v.

Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) (holding that a letter written by the claimant's

husband describing her symptoms was "cumulative of [claimant's] testimony concerning her

limitations and reports of pain, which the ALJ discussed and found not credible" and concluding

that "although the ALJ's decision [did] not expressly address this lay witness evidence, any error

in failing to do so is harmless because the same evidence that the ALJ referred to in discrediting

[the claimant's] claims also discredits [the lay witness's] claims" (citations and internal quotation

marks omitted)).

The court thus holds that the ALJ provided sufficient information to demonstrate he

appropriately considered the evidence when reaching his conclusion that plaintiff's impairments

don't meet the requirements of Listing 14.09.  Also, the ALJ provided sufficient information to

allow proper judicial review.  So, plaintiff's first argument provides no reason to reverse the

ALJ's decision.

**B.  The ALJ did not err in his conclusions about plaintiff's RFC.**

Plaintiff next argues that the ALJ erred in his conclusions about plaintiff's RFC because,

plaintiff contends, the record evidence doesn't support his findings.  The "RFC is an assessment

of an individual's ability to do sustained work-related physical and mental activities in a work

setting on a regular and continuing basis" meaning "8 hours a day, for 5 days a week, or an

equivalent work schedule."  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  It determines

the most individuals can do despite their limitations.  *Id.* ("RFC is not the *least* an individual can

do despite his or her limitation or restrictions, but the *most*.").

The "ALJ, not a physician, is charged with determining a claimant's RFC from the

medial record."  *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).  The RFC assessment

is an administrative determination, not a medical one.  *McDonald v. Astrue*, 492 F. App'x 875,

885 (10th Cir. 2012) (citing SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)).  The ALJ

should base the RFC determination on "all of the evidence in the record, not only the medical

evidence[.]" *Dixon v. Apfel*, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999).

The ALJ's RFC assessment "must include a narrative discussion describing how the

evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."

SSR 96-8p, 1996 WL 374184, at *7.  But, the ALJ need not discuss every piece of evidence as

long as the findings demonstrate the ALJ considered the whole record.  *Clifton v. Chater*, 79

F.3d 1007, 1009–10 (10th Cir. 1996).

Here, the ALJ determined that plaintiff "is limited to frequent handling and fingering[,]"

and also "is limited to occasional fine or precise manipulation."  Doc. 11-1 at 22 (AR 18).  The

ALJ explained that when "making this finding," he "considered all symptoms and the extent to

which these symptoms can reasonably be accepted as consistent with the objective medical

evidence and other evidence, based on the requirements of" 20 C.F.R. § 404.1529 and § 416.929

and SSR 16-3p.  *Id.*  Also, the ALJ said he "considered the medical opinion(s) and prior

administrative medical finding(s) in accordance with the requirements of" 20 C.F.R. §§

404.1520c and 416.920c.  *Id.*

Plaintiff contends that the record evidence can't support the ALJ's finding that plaintiff is

capable of "frequent handling and fingering."  She cites medical records from her treating

rheumatology specialist, Dr. Jennifer Kendall, noting plaintiff's swelling, pain, and reduced

range of motion.  Also, plaintiff cites her own subjective description of her symptoms.  The ALJ

considered both Dr. Kendall's records, *id.* at 23–26 (AR 19–22) (citing Exs. 2F & 6F), and

plaintiff's subjective description of her symptoms, *id.* at 23 (AR 19).  Also, the ALJ cited record

evidence discussing plaintiff's functional abilities and that reported plaintiff "spent her day

performing household chores, doing childcare, watching TV and [caring] for her personal

hygiene." *Id.* at 25 (AR 21).  Although plaintiff had "some issues with dressing and hair care

due to her condition[,]" plaintiff "was able to prepare meals but had issues with chopping and

stirring" and "was also able to shop for food and necessities."  *Id.*  Also, the ALJ cited

consultative examination records showing plaintiff "was able to dress and undress well, button

and unbutton, pick up and grasp a pen, write a sentence and lift and carry personal belongings"

and had only "mild difficulties with manipulative movements bilaterally with buttoning and

unbuttoning and tying her shoelaces."  *Id.*; *see also id.* at 26 (AR 22) (concluding plaintiff "was

able to dress and undress, button and unbutton, pick up and grasp a pen, write a sentence and

carry personal items" and while plaintiff "could not fully extend her fingers,]" she "was able to

flex them and had no strength deficits"); *id.* (describing physician's "physical examination" that

was "quite revealing regarding [plaintiff's] functional status" and showed plaintiff "could dress

and undress, button and unbutton, pick up and grasp a pen, write a sentence and carry items" as

well as "flex her hands and had no strength deficits" and that plaintiff's "daily activities reflect

some light activity"); *id.* at 26–27 (AR 22–23) (discussing physician's consultative examination

that "opined" plaintiff "could perform fine and gross manipulative movements of the hands and

fingers including opening a door and using a knob, squeezing BP cuff bulb, picking up a coin,

picking up a cup and pen, zipping and unzipping and pinching").

Based on that evidence—and other evidence discussed in the ALJ's decision—the ALJ

reached his conclusions about plaintiff's RFC and explained it was "supported by the medical

evidence of record, the record as a whole, State agency findings and testimony."  Doc. 11-1 at 27

(AR 23).  Thus, the ALJ's decision included the required "narrative discussion describing how

the evidence supports each conclusion, citing specific medical facts . . . and nonmedical

evidence."  SSR 96-8p, 1996 WL 374184, at *7; *see also Terry v. Colvin*, No. 14-2110-JWL,

2015 WL 400907, at *11 (D. Kan. Jan. 28, 2015) (explaining that SSR 96-8p's required narrative

discussion doesn't "require citation to a medical opinion, or even to medical *evidence* in the

administrative record for each RFC limitation assessed" but does require the ALJ to "describe

how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical

evidence supporting the RFC assessment" (citations and internal quotation marks omitted)).  The

ALJ's decision shows that he considered the whole record and appropriately cited his reasons for

accepting and rejecting the record evidence used to support his RFC determination.  *Clifton*, 79

F.3d at 1009–10.  The court thus holds that the ALJ didn't err in reaching his conclusions about

plaintiff's RFC.[4]

---

[4]        Plaintiff's opening brief asserts—without citing the record or any legal argument—that the ALJ's
RFC decision is "confusing" because it doesn't differentiate between "fingering" and "fine or precise
manipulation."  Doc. 18 at 15.  The Commissioner argues that plaintiff has waived this argument by
citing no authority to support it.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012)
(explaining that a court "will consider and discuss only those of [a claimant's] contentions that have been
adequately briefed for [the court's] review").  Even if plaintiff hasn't waived the argument, the court
rejects it as a reason to reverse the Commissioner's decision.  The record shows that the vocational expert
testified about a person's ability to perform certain jobs in the national economy when that person is
"limited to occasional fine . . . or precise manipulation" and also "able to frequently handle and finger[.]"
Doc. 11-1 at 51–52 (AR 47–48).  The transcript of proceedings before the ALJ reveals no confusion by
the vocational expert about these terms.  Indeed, the Social Security Administration has defined
"fingering" as "picking, pinching, or otherwise working primarily with the fingers" but clarifies that "[a]s
a general rule, limitations of fine manual dexterity have greater adjudicative significance—in terms of
relative numbers of jobs in which the function is required—as the person's exertional RFC decreases" and
a "loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does
the medium, heavy, and very heavy ranges of work."  SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985).
It further provides that the "varying degrees of loss which can occur may require a decision-maker to
have the assistance of a [vocational expert]."  *Id.*  But, based on this guidance, "a claimant restricted from
fine fingering does not necessarily mean the claimant cannot perform fingering in general where fine,
delicate work is not required."  *Thomure v. Colvin*, No. EDCV 12-1992-DTB, 2014 WL 1225016, at *3
(C.D. Cal. Mar. 21, 2014); *see also Kimberly H. v. Saul*, No. 3:20-cv-00415-IM, 2021 WL 3861156, at *5
(D. Or. Aug. 30, 2021) (holding that ALJ's failure to include a "fine manipulation limitation" in the RFC
didn't "affect the ultimate disability determination" because it wouldn't preclude plaintiff from working
in a job "which requires constant fingering" but "does not require very fine, delicate work" (citations and
internal quotation marks omitted)).

        The ALJ found that plaintiff has the same limitations as ones provided in the hypothetical
questioning of the vocational expert—*i.e.*, the limitations of occasional fine or precise manipulation and
frequent handling or fingering.  The ALJ concluded plaintiff has those limitations based on his
consideration of and citation to the record evidence.  *Id.* at 22 (AR 18).  The vocational expert's testimony

### C. The ALJ's decision is supported by substantial evidence to support the determination.

Plaintiff's last argument asserts that the ALJ improperly weighed the medical opinion evidence, thus reaching a decision unsupported by sufficient substantial evidence. Plaintiff argues that Dr. Kendall "is in the best position to render an opinion" about the effects of plaintiff's inflammatory arthritis on her functioning because she had an "ongoing examining relationship" with plaintiff. Doc. 18 at 16. And, plaintiff asserts, the ALJ erred by giving "great weight to the opinion of one-time consultative examiner Jesal Amin, M.D." *Id.*

For Disability Insurance Benefits and Supplement Security Income claims filed after March 27, 2017, the Agency does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)" when making its determinations. 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a). The primary factors for assessing medical source opinions are supportability and consistency and, where applicable, the agency must explain how it considered these factors. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2). Where equally supported, consistent, and persuasive opinions or findings reach different conclusions, the Agency considers additional factors. They include the relationship between the source and applicant as well as the source's specialization. 20 C.F.R. § 404.1520c(b)(3), (c)(3)–(5); 20 C.F.R. § 416.920c(b)(3), (c)(3)–(5).

The ALJ may discount "[m]edical evidence . . . if it is internally inconsistent or inconsistent with other evidence." *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007)

---

identified three jobs that a hypothetical person with those limitations could perform. *Id.* at 52 (AR 48). And, the ALJ concluded that plaintiff could perform those three jobs after considering plaintiff's age, education, work experience and RFC. *Id.* at 27 (AR 23). The ALJ's findings comport with testimony by the vocational expert. And, the vocational expert's "testimony is substantial evidence supporting the ALJ's conclusion[.]" *Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990). Thus, plaintiff fails to show that the ALJ erred.

(citation and internal quotation marks omitted).  But, the court may "not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and internal brackets and quotation marks omitted).

As discussed, the ALJ's decision shows that he reviewed the entire record, even though he did not include every detail in his decision.  Doc. 11-1 at 22–27 (AR 18–23).  The ALJ evaluated the medical findings and opinions of Dr. Kendall.  *Id.* at 23–26 (AR 19–22) (citing Exs. 2F & 6F).  The ALJ recognized Dr. Kendall's relationship to plaintiff by referring to her as "claimant's physician[.]"  *Id.* at 24 (AR 20).  The ALJ also noted that Dr. Kendall found plaintiff's condition "severe[.]"  *Id.* at 26 (AR 22).  But, the ALJ contrasted Dr. Kendall's findings with Dr. Amin's "physical examination" which the ALJ described as "quite revealing regarding [plaintiff's] functional status."  *Id.* (citing Ex. 4F).  The ALJ described Dr. Amin's findings about plaintiff's functionality and found that assessment "consistent with treatment records, physical exams, and reported activities."  *Id.* at 26–27 (AR 22–23).  Also, the ALJ found Dr. Amin's assessment "persuasive."  *Id.* at 27 (AR 23).  The ALJ also found "persuasive" the opinions of "State agency medical consultants" who opined about plaintiff's functionality and found those opinions "consistent with" plaintiff's "physical impairments[,]" the "objective physical exams[,]" and plaintiff's "reported activities."  *Id.* at 26 (AR 22) (citing Exs. 1A, 2A, 7A, & 8A).[5]

---

[5]      Plaintiff complains that two documents in the State agency records establish that plaintiff has difficulty with "fingering" but yet the RFC determination found that plaintiff was limited to frequent "handling and fingering" and "occasional fine or precise manipulation."  *Id.* at 22 (AR 18).  The specific records that plaintiff references assert that plaintiff should avoid tasks "requiring frequent fingering (fine manipulation)[.]"  *Id.* at 62 (AR 58); *see also id.* at 100 (AR 96).  In both documents, the medical provider appears to define "fingering" as "fine manipulation."  And indeed, the ALJ's RFC determination limits plaintiff to "occasional fine or precise manipulation[,]" *id.* at 22 (AR 18), which is consistent with the State agency medical records.

In sum, the ALJ's decision shows he reviewed and considered Dr. Kendall's opinions, but noted that they weren't consistent with other record evidence.  He considered the consistency and supportability of other medical evidence, finding that evidence persuasive, thus justifying why he afforded greater weight to those opinions than he did to Dr. Kendall's opinions.  By doing so, the ALJ complied with the requirement to "articulate . . . how persuasive" he found "all of the medical opinions and all of the prior administrative medical findings[.]"  20 C.F.R. § 404.1520c(b); 20 C.F.R. § 416.920c(b).  And, he explained how he considered the most important factors—the "supportability" and "consistency" factors—when evaluating the medical opinions.  20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).  Thus, the ALJ followed the law, and his decision is supported by substantial evidence.

Based on this record, plaintiff hasn't established an "error in the ALJ's rationale or finding[.]"  *Nicholas P. S. v. Saul*, No. 20-2360-JWL, 2021 WL 2711172, at \*7 (D. Kan. July 1, 2021).  Plaintiff can't show error by "the mere fact that there is evidence which might support a contrary finding[,]" perhaps with Dr. Kendall's opinions.  *Id.*  Indeed, the "'possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'"  *Id.* (quoting *Lax*, 489 F.3d at 1084).  As already explained, the court can't "displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  *Lax*, 489 F.3d at 1084 (citation and internal brackets and quotation marks omitted).  Thus, plaintiff's third argument provides no sufficient reason for the court to reverse and remand the ALJ's decision denying plaintiff's claim for benefits.

15

## IV.     Conclusion

After considering the briefs submitted and conducting its own review of the administrative record, the court finds that substantial evidence supports the ALJ's decision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff's applications for Disability Insurance Benefits and Supplement Security Income is affirmed.  The court directs the Clerk to enter Judgment under the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's final decision.

**IT IS SO ORDERED.**

**Dated this 14th day of March, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
